| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| HARRIS L. COHEN, ESQ. BAR #119600<br>HARRIS L. COHEN, A PROF. CORP<br>5305 ANDASOL AVE.<br>ENCINO, CA 91316<br>TEL 818-905-5599 FAX 818-905-5660<br>email: hcohen00@aol.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>Masoud Noveir<br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:15-bk-24970-TD<br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: 11/18/2015<br>TIME: 10:00 a.m.<br>COURTROOM: 1345 |

**Movant:** DLI Properties, LLC

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012       ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 1                        F 4001-1.RFS.RP.MOTION

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than *(date)* _____ and *(time)* _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: <u>10/20/2015</u>

HARRIS L. COHEN, A PROF. CORP.
Printed name of law firm (if applicable)

HARRIS L. COHEN, ESQ.
Printed name of individual Movant or attorney for Movant

Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                     Page 2                        F 4001-1.RFS.RP.MOTION

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☒ Other (specify):
   Movant purchased the subject property at a foreclosure sale on 9/30/2015

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 1531 Camden Ave.
   *Unit/suite number*: #101
   *City, state, zip code*: LOS ANGELES, CA 90024

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit _____):   Deed of Trust Exhibit "5"

3. **Bankruptcy Case History:**

   a. A ☐ voluntary ☒ involuntary  bankruptcy petition under chapter  ☒ 7 ☐ 11 ☐ 12 ☐ 13
   was filed on (*date*)  9/29/2015  .

   b. ☐ An order to convert this case to chapter  ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

      (1) ☐ Movant's interest in the Property is not adequately protected.

         (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

         (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

      (2) ☒ The bankruptcy case was filed in bad faith.

         (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

         (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

         (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

         (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

         (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

         (F) ☒ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 3                    **F 4001-1.RFS.RP.MOTION**
Page 3

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
       ☒ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12
       trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not
       been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____,
    which is ☐ prepetition ☐ postpetition.

(6) ☒ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to
    § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or
    30 days after the court determined that the Property qualifies as "single asset real estate" as defined in
    11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay,
    hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or
       court approval; or

    (2) ☒ Multiple bankruptcy cases affecting the Property.    .

5. ☒ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have
    been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed
    with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☒ Other *(specify)*:
    Movant purchased the Property at a foreclosure sale without any announcement of the bankruptcy and the
    case was filed in bad faith the day before to stop the sale based on fractional interest of co-trustee.

6. **Evidence in Support of Motion:** (*Declaration(s) MUST be signed under penalty of perjury and attached to this
motion*)

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set
    forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case
    commencement documents are attached as Exhibit _____.

d. ☐ Other:

7. ☒ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 4                                    F 4001-1.RFS.RP.MOTION

**Movant requests the following relief:**

1.  Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2.  ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property. and have the Trustee's deed upon sale issued and complete the foreclosure sal

3.  ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement. Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.

3.  ☐ Confirmation that there is no stay in effect.

4.  ☒ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

5.  ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6.  ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7.  ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

8.  ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

9.  ☒ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or  ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

10. ☒ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or  ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

12. ☐ If relief from stay is not granted, adequate protection shall be ordered.

13. ☒ See attached continuation page for other relief requested.

Date:  10/20/2015

HARRIS L. COHEN, A PROF. CORP.
Printed name of law firm (*if applicable*)

HARRIS L. COHEN, ESQ.
Printed name of individual Movant or attorney for Movant

Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

CONTINUATION OF 13

That the order provide that annulment of the stay is effective such that the lender is authorized to complete the foreclosure sale and issue the Trustee's Deed Upon Sale for the Property to Movant.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) PETER BAER _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as (*state title and capacity*):    Manager

   c. ☐ Other (*specify*):

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached*):

3. The Movant is:

   a. ☐ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed alonges/indorsements, is attached as Exhibit _____.

   b. ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____.

   c. ☐ Servicing agent authorized to act on behalf of the:
      ☐ Holder.
      ☐ Beneficiary.

   d. ☒ Other (*specify*): Movant purchased the Property at a foreclosure sale on 9/30/2015

4. a. The address of the Property is:

      *Street address*: 1531 Camden Ave.
      *Unit/suite no.*: #101
      *City, state, zip code*: Los Angeles, CA 90024

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

      See Exhibit "5" to declaration with legal description

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 6                        F 4001-1.RFS.RP.MOTION

5. Type of property (*check all applicable boxes*):

    a. ☐ Debtor's principal residence        b. ☐ Other residence
    c. ☐ Multi-unit residential             d. ☐ Commercial
    e. ☐ Industrial                    f. ☐ Vacant land
    g. ☒ Other (*specify*): Debtor is alleged co-trustee of condominium

6. Nature of the Debtor's interest in the Property:

    a. ☐ Sole owner

    b. ☐ Co-owner(s) (*specify*):

    c. ☐ Lienholder (*specify*):

    d. ☒ Other (*specify*): co-trustee of unnamed trust

    e. ☒ The Debtor ☐ did ☐ did not  list the Property in the Debtor's schedules.

    f. ☒ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.
        The deed was recorded on (*date*) 8/14/12 .

7. Movant holds a ☐ deed of trust ☐ judgment lien ☒ other (*specify*) Foreclosure sale purchaser
   that encumbers the Property. foreclosure sale receipt for winning bid is Exhibit "1"

    a. ☐ A true and correct copy of the document as recorded is attached as Exhibit _____.

    b. ☐ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
        attached as Exhibit _____.

    c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
        trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ |
| b. | Accrued interest: | $ | $ | $ |
| c. | Late charges | $ | $ | $ |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[          ] |
| g. | TOTAL CLAIM as of (*date*): | $ | $ | $ |

    h. ☐ Loan is all due and payable because it matured on (*date*) _____
                                           FORECLOSURE SALE PURCHASER

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
   has occurred*):

    a. Notice of default recorded on (*date*) 8/18/2011 or ☐ none recorded.

    b. Notice of sale recorded on (*date*) 9/9/2014 or ☐ none recorded.

    c. Foreclosure sale originally scheduled for (*date*) _____ or ☐ none scheduled.

    d. Foreclosure sale currently scheduled for (*date*) _____ or ☐ none scheduled.

    e. Foreclosure sale already held on (*date*) 9/30/2015 or ☐ none held.

    f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                 Page 7                     F 4001-1.RFS.RP.MOTION

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:     foreclosure sale purchaser

    a.  Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

    b.  Number of payments that have come due and were not made: _____. Total amount: $_____

    c.  Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d.  The fair market value of the Property is $_____, established by:

        (1) ☐  An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☐  A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐  A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☐  Other (*specify*):

    e.  **Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT:** $ | | | |

    f.  Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

        (1) ☐  Preliminary title report.

        (2) ☐  Relevant portions of the Debtor's schedules.

        (3) ☐  Other (*specify*):

    g.  ☐  **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

    h.  ☐  **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                  Page 8                          F 4001-1.RFS.RP.MOTION

i. ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

    a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

    b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

    c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

    d. Postpetition advances or other charges due but unpaid:        $
(*For details of type and amount, see Exhibit _____*)

    e. Attorneys' fees and costs:        $
(*For details of type and amount, see Exhibit _____*)

    f. Less suspense account or partial paid balance:    $[        ]

        TOTAL POSTPETITION DELINQUENCY:    $

    g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

    h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

    i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014        Page 9        F 4001-1.RFS.RP.MOTION

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (date) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (date) _____, which is ☐ prepetition ☐ postpetition.

17. ☒ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☒ Other (specify):
      see attached declaration of Peter Baer and Debtor's only interest is a fractional 1/8 interest as a co-trustee of an unnamed trust and involuntary petition was filed one day prior to foreclosure sale

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

      1. Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☒ was not granted.

      2. Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☒ was not granted.

      3. Case name: _____
         Chapter: _____    Case number: _____
         Date filed: _____    Date discharged: _____    Date dismissed: _____
         Relief from stay regarding the Property ☐ was ☒ was not granted.

      ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

      ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☒ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☒ For other facts justifying annulment, see attached continuation page.   SEE DECLARATION

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

<u>10/20/2015</u>            Peter Baer
*Date*                *Printed name*                      *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*              Page 11              F 4001-1.RFS.RP.MOTION
Page 12

**2:15-bk-24970-TD  -  MASOUD NOVEIR - CHAPTER 7**

## I.    APPLICABLE LAW

A bankruptcy Court has "discretion to grant retroactive relief from the automatic say." *In re AVI, Inc.,* 289 B.R. 721, 731 (9th Cir. BAP 2008).

"Whether to grant retroactive relief from the automatic stay under §362(d) is a decision committed to the discretion of the bankruptcy court. *Nat'l Envtl. Waste,* 129 F.3ed at 1054. In *Nat'l Envtl. Waste*, the Ninth Circuit adopted a balancing of equities approach for analyzing a request for retroactive stay relief, and identified two factors to be considered by the bankruptcy court: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor. *Id.* At 1055-56. In *In re Fjeldsted,* 293 B.R. 12, 24-25 (9th Cir. BAP 2003), following *Nat'l Envtl. Waste,* we approved consideration off additional factors by the bankruptcy court, including: the number of filings; the extent of any prejudice , including to a bona fide purchaser; the debtor's overall good faith; the debtor's compliance with the Code; how quickly the creditor moved for annulment; and how quickly the debtor moved to set aside the sale. But because a mechanistic application of 'factors' is inappropriate in making the determination of whether to annul the stay, in *Fjeldsted*, we observed that: "Mindful that such lists [of factors] are capable of being misconstrued as inviting arithmetic reasoning, we emphasize that these items are merely a framework for analysis and not a scorecard.

In any given case, one factor may so outweigh the others as to be dispositive." *In re Williams,* 323 B.R. 691, 700 (9th Cir. BAP 2005) (Emphasis in original).


### INTRODUCTION

ALLEGED CREDITOR, DIANA YAGHOBI, FILED THIS CASE ON 9/29/15 TO INTERFERE WITH THE FORECLOSURE SALE SET THE NEXT DAY. MOVANT WAS THE FORECLOSURE SALE PURCHASER ON THAT DATE. THE PROPERTY IS A CONDOMINIUM LOCATED AT 1531 CAMDEN AVE., #101, LOS ANGELES, CA 90024.

THE INVOLUNTARY DEBTOR RECEIVED A 1/8 INTEREST IN THE PROPERTY AND WAS A FRACTIONAL HOLDER.

THE FORECLOSURE TRUSTEE HELD THE FORECLOSURE SALE OF THE PROPERTY ON 9/30/15 WITHOUT NOTICE OF THE IMPROPER BANKRUPTCY FILING. THE CREDITOR FILED AN INVOLUNTARY PETITION ALLEGING $13,000 IS OWED FOR GOODS BUT THE ADDRESS OF THE CREDITOR IS A BEAUTY SALON, NOT A DISTRIBUTOR OR MANUFACTURER THAT SELLS GOODS. A GOOGLE SEARCH REVEALS THAT THE NAME OF THE CREDITOR DOES NOT EVEN SHOW ON THE FIRST PAGE.

MOVANT PURCHASED THE PROPERTY AT THE FORECLOSURE SALE THE DAY AFTER THIS APPARENT BAD FAITH FILING AND SEEKS

**TO ANNUL THE STAY AS THE FORECLOSING TRUSTEE REQUIRES THIS TO ISSUE THE TRUSTEE'S DEED UPON SALE.   THE COURT APPEARS TO BELIEVE THERE IS AN ISSUE OF BAD FAITH AND ISSUED AN OSC TO THE PETITIONING CREDITOR**

### I.    STATEMENT OF FACTS

1.    Movant, DLI Properties, LLC ("DLI") was the high bidder at the foreclosure sale of the real property at 1531 Camden Ave., #101, Los Angeles, CA 90024 (the "Property"), and paid $678,089.41 for it at the foreclosure sale on September 30, 2015. (Exhibit "1").  Petitioning Creditor, Diana Yaghobi, filed this case alleging there was $13,000 owed to her for "goods."  (Exhibit "2").  The address she used is that of a hair salon, not a distributor or manufacturer selling "goods." (Exhibit "3").  A google.com search for her name does not have any direct hits identifying her as being connected with the hair salon or as owner of a distributor or manufacturer on the first page. (Exhibit "4").

2.    Sahar Jamshidigilani borrowed $516,000 in 2006 secured by the Property. (Exhibit "5").   **At a time when the loan was in default**, Sahar transferred a 1/8 fractional interest to Masoud KB Noveir, the involuntary debtor, **as a "co-trustee" without naming the alleged trust in August 2012**.  (Exhibit "6").  **This arguably did not provide the debtor with any ownership interest or equity and merely named him as a trustee of an unknown trust.**  There was no transfer tax paid on that transfer as

indicated on the deed and therefore it was not a "purchase" by this debtor of any interest in the Property.

3.     The loan secured by the deed of trust was in arrears prior to the transfer to the involuntary debtor as of the recording of the notice of default and election to sell ("NOD") on August 18, 2011 as instrument number 20111112766. (Exhibit "7")

4.     The notice of trustee's sale was recorded on September 9, 2014 as instrument number 20140944258 and the amount of the unpaid balance and other charges was $735,785.81. (Exhibit "8").

5.     The foreclosure sale took place and there was no indication at the sale that the bankruptcy prohibited the sale by the foreclosing trustee. The general procedure of foreclosure trustees are that sales are not conducted if a bankruptcy is timely noticed to the trustee.

6.     DLI purchased the Property at the foreclosure sale without any announcement by the foreclosure trustee of the involuntary petition.

7.     Based on the bad faith inequitable conduct by the involuntary creditor in filing this case, the lack of true ownership of the Property by the involuntary debtor, and the filing against an alleged fractional owner solely to interfere with the foreclosure sale by an improper use of the Bankruptcy process, the Court should annul the stay retroactively to the filing of the case as to this transaction and validate the foreclosure sale and grant retroactive relief and annulment.

8.    The foreclosure sale trustee will not issue a trustee's deed upon sale to DLI until the automatic stay is annulled.

HARRIS L. COHEN, A PROF. CORP.

By: _____
       Harris L. Cohen, Esq.
       Attorney for Movant, DLI

## DECLARATION OF PETER BAER

I, Peter Baer, hereby declare and state:

I am over the age of 18 and have personal knowledge as to all facts set forth herein and if called upon to testify thereto, I could and would competently do so.

1.    I am the manager of DLI Properties, LLC ("DLI"), the movant with authority to file this motion.

2.    Movant, DLI, was the high bidder at the foreclosure sale of the real property at 1531 Camden Ave., #101, Los Angeles, CA 90024 (the "Property"), and paid $678,089.41 for it at the foreclosure sale on September 30, 2015. (A true and correct copy of the receipt from the sale is attached hereto as Exhibit "1"). Petitioning Creditor, Diana Yaghobi, filed this case alleging there was $13,000 owed to her for "goods." (A true and correct copy of the involuntary petition pages showing that claim are attached hereto as Exhibit "2"). The address she used is that of a hair salon, not a distributor or manufacturer selling "goods." (A copy of the google entry for the address of the petitioning creditor is attached hereto as Exhibit "3"). A google.com search for her name does not have any direct hits identifying her as being connected with the hair salon or as

owner of a distributor or manufacturer on the first page.  (A copy of the first page of a google search for the petitioning creditor's name is attached hereto as Exhibit "4").

3.     Sahar Jamshidigilani borrowed $516,000 in 2006 secured by the Property. (A true and correct copy of the deed of trust is attached hereto as Exhibit "5").  **At a time when the loan was in default**, Sahar transferred a 1/8 fractional interest to Masoud KB Noveir, the involuntary debtor, **as a "co-trustee" without naming the alleged trust in August 2012**.  (A true and correct copy of the fractional grant deed is attached hereto as Exhibit "6").  **This arguably did not provide the debtor with any ownership interest or equity and merely named him as a trustee of an unknown trust.**  There was no transfer tax paid on that transfer as indicated on the deed and therefore it was not a "purchase" by this debtor of any interest in the Property.

4.     The loan secured by the deed of trust was in arrears prior to the transfer to the involuntary debtor as of the recording of the notice of default and election to sell ("NOD") on August 18, 2011 as instrument number 20111112766. (A true and correct copy of the NOD is attached hereto as Exhibit "7")

5.     The notice of trustee's sale was recorded on September 9, 2014 as instrument number 20140944258 (the "NOS") and the amount of the unpaid balance and other charges was $735,785.81.  (A true and correct copy of the NOS is attached hereto as Exhibit "8").

6.     The foreclosure sale took place and there was no indication at the sale that the bankruptcy prohibited the sale by the foreclosing trustee.  The general procedure of

foreclosure trustees are that sales are not conducted if a bankruptcy is timely noticed to the trustee. I know this based on my 20+ years of attending foreclosure sales in Los Angeles County.

7.    DLI purchased the Property at the foreclosure sale without any announcement by the foreclosure trustee of the involuntary petition. I was on the speaker phone with the purchaser at the sale and heard the sale as it was conducted and there was no announcements of the sale.

8.    Based on the bad faith inequitable conduct by the involuntary creditor in filing this case, the lack of true ownership of the Property by the involuntary debtor, and the filing against an alleged fractional owner solely to interfere with the foreclosure sale by an improper use of the Bankruptcy process, the Court should annul the stay retroactively to the filing of the case as to this transaction and validate the foreclosure sale and grant retroactive relief and annulment.

9.    The foreclosure sale trustee will not issue a trustee's deed upon sale to DLI until the automatic stay is annulled.

10.    A true and correct copy of the Court's OSC to the petitioning creditor is attached hereto as Exhibit "9."

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed at Agoura Hills, California on October 20, 2015.

_____
Peter Baer

# EXHIBIT "1"

## RECEIPT OF FUNDS

DATE __9-30-15__ NPP# __235846__ TS# __2011013400 2852__

(X) Trustee's Sale ( ) Sale of Collateral ( ) Reinstatement

Trustee Name __BARRETT DAFFIN FRAPPIER TREDER & WEISS__

Contact __KELLIE BOSWELL__

Address __15000 SURVEYOR BLVD # 500__

City __ADDISON__ St __TX__ Zip __75001__ Phone __866-795-1852__

**FUNDS RECEIVED:** **NUMBER OF CHECKS** __12__

| Check Number | Drawn on (Name of Financial Institution) | Amount |
|---|---|---|
| 9161353 | FARMERS & MERCHANTS | 100,000 |
| 9161354 / 9161355 | | 90,000 / 10,000 |
| 9161356 / 9161357 | | 80,000 / 20,000 |
| 9161358 / 9161359 | | 75,000 / 25,000 |
| 9161360 / 9161361 | | 70,000 / 30,000 |
| 9161380 / 9161382 | | 65,000 / 35,000 |
| 9161376 | | 80,000 |

TOTAL CHECKS RECEIVED (A) $ __680,000.00__

__10:35__

Receipt of Currency: x 100 = 
Buyer or Buyers Agent x 50 = 
and Trustee's Sale Agent x 20 = __1531 CAMDEN Ave__
Initial Below. x 10 = __# 101__
 x 5 = __Los Angeles, Ca.__
Buyer's Initials  TS Agent Initials x 1 = 
 x Coin = 

TOTAL CASH RECEIVED (B) $ 
TOTAL ALL FUNDS (A+B) $ __680,000.00__

Total Funds Collected $ __680,000.00__
Subtract Amount of Final Bid $ __678,089.41__
Subtract Doc/City/Rec. Fees. $ 
*Equals Amount of Refund $ __1,910.39__

*If refund, check should be made payable to: __Strategic Acq INC__

Agent for Trustee Signature

**BUYER/RECORDING INFORMATION**

Rep. Name __Michael Keller__ Company Name __Strategic Acq Inc__

Address __22455 Beverly RD__

City __Beverly Hills__ St __CA__ Zip __91367__

Phone __(818) 767-7851__ Email 

Mailing address for recorded documents (if different from above)

Driver's License # __A2067727__ or Social Security # 

Title to be recorded as follows (Vesting)
__DCI Properties LLC as Nominee__

Buyer's signature below indicates that Buyer understands that a sale and contract Buyer's signature below affirms Buyer's or Buyer's Agent understands and agrees that the sale of the interest in the property is on an "as is" basis with no warranty, expressed or implied, regarding and not limited to, title, condition, possession or encumbrances.

Signature of Buyer or Buyer's Representative _____ Date __9-30-15__

Trustee - White     Buyer - Yellow     Nationwide - Pink

Nationwide Posting & Publication

# EXHIBIT "2"

B 5 (Official Form 5) (12/07)

| UNITED STATES BANKRUPTCY COURT | INVOLUNTARY PETITION |
|---|---|

| | |
|---|---|
| IN RE (Name of Debtor – If Individual: Last, First, Middle)<br>Novein, Masoud | ALL OTHER NAMES used by debtor in the last 8 years<br>(Include married, maiden, and trade names.) |
| Last four digits of Social-Security or other Individual's Tax-I.D. No./Complete EIN<br>(If more than one, state all.): 0011 | |
| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code)<br>1531 Camden Ave #101<br>Los Angeles, Ca | MAILING ADDRESS OF DEBTOR (If different from street address) |
| COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS<br>Los Angeles                    ZIP CODE<br>90025 | ZIP CODE |

LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (If different from previously listed addresses)

CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED

Chapter 7    Chapter 11

INFORMATION REGARDING DEBTOR (Check applicable boxes)

| Nature of Debts<br>(Check one box.)<br><br>Petitioners believe:<br><br>☑ Debts are primarily consumer debts<br>☐ Debts are primarily business debts | Type of Debtor<br>(Form of Organization)<br>☑ Individual (Includes Joint Debtor)<br>☐ Corporation (Includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.) | Nature of Business<br>(Check one box.)<br>☐ Health Care Business<br>☐ Single Asset Real Estate as defined in<br>11 U.S.C. § 101(51)(B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other |

| VENUE | FILING FEE (Check one box) |
|---|---|
| ☑ Debtor has been domiciled or has had a residence, principal<br>place of business, or principal assets in the District for 180<br>days immediately preceding the date of this petition or for<br>a longer part of such 180 days than in any other District.<br><br>☐ A bankruptcy case concerning debtor's affiliate, general<br>partner or partnership is pending in this District. | ☐ Full Filing Fee attached<br><br>☐ Petitioner is a child support creditor or its representative, and the form<br>specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached<br>[If a child support creditor or its representative is a petitioner, and if the<br>petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of<br>1994, no fee is required.] |

PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER
OR AFFILIATE OF THIS DEBTOR (Report information for any additional cases on attached sheets.)

| Name of Debtor | Case Number | Date |
|---|---|---|
| Relationship | District | Judge |

| ALLEGATIONS<br>(Check applicable boxes) | COURT USE ONLY |
|---|---|
| 1.    ☐ Petitioner (s) are eligible to file this petition pursuant to 11 U.S.C. § 303 (b).<br>2      ☐ The debtor is a person against whom an order for relief may be entered under title 11 of the United<br>States Code.<br>3.a. ☐ The debtor is generally not paying such debtor's debts as they become due, unless such debts are<br>the subject of a bona fide dispute as to liability or amount;<br>or<br>b. ☐ Within 120 days preceding the filing of this petition, a custodian, other than a trustee receiver, or<br>agent appointed or authorized to take charge of less than substantially all of the property of the<br>debtor for the purpose of enforcing a lien against such property, was appointed or took possession. | FILED<br>SEP 29 2015<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY_____ Deputy Clerk |

B 5 (Official Form  5) (12/07) – Page 2

Name of Debtor *Noveir, Masoud*

Case No. _____

---

**TRANSFER OF CLAIM**

☐ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner.  Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a).

**REQUEST FOR RELIEF**

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition.  If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| | |
|---|---|
| x _(signature)_ | x _____ |
| Signature of Petitioner or Representative (State title) | Signature of Attorney                                    Date |
| Name of Petitioner  **Diana Yaghobi**       Date Signed **9/29/15** | Name of Attorney Firm (If any) |
| Name & Mailing Address of Individual Signing in Representative Capacity   **Diana Yaghobi  9875 S. Santa Monica  Beverly Hills, Ca  90212** | Address _____  Telephone No. _____ |
| x _____ | x _____ |
| Signature of Petitioner or Representative (State title) | Signature of Attorney                                    Date |
| Name of Petitioner                          Date Signed | Name of Attorney Firm (If any) |
| Name & Mailing Address of Individual Signing in Representative Capacity | Address _____  Telephone No. _____ |
| x _____ | x _____ |
| Signature of Petitioner or Representative (State title) | Signature of Attorney                                    Date |
| Name of Petitioner                          Date Signed | Name of Attorney Firm (If any) |
| Name & Mailing Address of Individual Signing in Representative Capacity | Address _____  Telephone No. _____ |

**PETITIONING CREDITORS**

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| **Diana Yaghobi** | **Goods** | **13,000.—** |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |

Note:   If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above.

Total Amount of Petitioners' Claims

_____ continuation sheets attached

EXHIBIT "3"

| Find tacos, cheap dinner, Max's | Near San Francisco, CA | Log in |

yelp

Home   About Me   Write a Review   Find Friends   Messages   Talk   Events

# Shirin Salon

★★★★★ 24 reviews   Details

$$$ · Hair Salons   Edit



9875 S Santa Monica Blvd   Edit
Beverly Hills, CA 90212
Beverly Hills
Get Directions
(310) 274-4746
Message the business
shirinatbeverlyhills.com



See all 158 photos

Party up do by Shirin A.


"I have requested the same updo at so many other salons and none were able to ever get it right, Shirin got it spot on." in 3 reviews


"I get best compliments whenever she styles my hair or does my make up." in 3 reviews


"I don't mind at all driving from San Diego to come see you cuz, you truly are an artist and love your work." in 2 reviews


Ad  New Look Skin Center
★★★★☆ 560 reviews
New Look Skin Center has been passionately serving patients since 2007 under the ownership of Siamak P. Etehad, MD and Maria Hambarsoonian, RN. During this time we have build a reputation as an affordable and safe medical... read more


Ad  Planet Salon
★★★★☆ 209 reviews    2.8 miles away from Shirin Salon
julie f. said "I've been coming here to see Heather for color for over 3 years, starting at the old location and now at the fabulous..." read more

## Recommended Reviews

| Search reviews |

Sort by Yelp Sort

English (24)

Your trust is our top concern, so businesses can't pay to alter or remove their reviews. Learn more.  ✕


Start your review of Shirin Salon.

Select your rating.

Hannah S.

---

Today  8:00 am - 6:00 pm  Open now

$$$$  Price range  Pricey

### Hours

| Mon | Closed |
| Tue | 8:00 am - 6:00 pm  Open now |
| Wed | 8:00 am - 6:00 pm |
| Thu | 8:00 am - 6:00 pm |
| Fri | 8:00 am - 6:00 pm |
| Sat | 8:00 am - 6:00 pm |
| Sun | Closed |

Edit business info

### More business info

Accepts Credit Cards  Yes
Parking  Street
Wheelchair Accessible  Yes
Good for Kids  Yes
By Appointment Only  Yes

Nikki S.      Page 26

# EXHIBIT "4"

Google   DIANA YAGHOBI                                                      Harris

Web     Images     News     Maps     Videos     More ▿     Search tools

About 68,300 results (0.68 seconds)

### Diana Palm | Facebook
https://www.facebook.com/mariam.**yaghobi** ▾
**Diana** Palm is on Facebook. Join Facebook to connect with **Diana** Palm and others you
may know. Facebook gives people the power to share and makes the ...

### Bahareh Yaghobi | Facebook
https://www.facebook.com/bahareh.**yaghobi**.5 ▾
Bahareh **Yaghobi** is on Facebook. Join Facebook to connect with Bahareh **Yaghobi**
and others you may know. Facebook gives people the power to share and ...

### Hamideh Yaghobi | Facebook
https://www.facebook.com/hamideh.**yaghobi**.3 ▾
Hamideh **Yaghobi** is on Facebook. Join Facebook to connect with Hamideh **Yaghobi**
and others you may know. Facebook gives people the power to share and ...

### Ali Yaghobi | Facebook
https://www.facebook.com/people/Ali-**Yaghobi**/100008336208848
Ali **Yaghobi** is on Facebook. Join Facebook to connect with Ali **Yaghobi** and others
you may know. Facebook gives people the power to share and makes the...

### Vilet Yaghobi | Facebook
https://www.facebook.com/vilet.**yaghobi** ▾
Vilet **Yaghobi** is on Facebook. Join Facebook to connect with Vilet **Yaghobi** and others
you may know. Facebook gives people the power to share and makes the ...

### Images for DIANA YAGHOBI                          Report images



More images for DIANA YAGHOBI

### The Study on Relationship between Organizational Justice ...
www.sciencedirect.com/science/.../S1877042812017156 ▾   ScienceDirect ▿
by MI Nojani - 2012 - Cited by 7 - Related articles
Sep 1, 2012 - Dianna, 1992; Lobosco, Anna.F&Newman,**Dianna**. ... **Yaghoubi** and
Saqayyan nezhad, 2009; **Yaghoubi**,M., & Saqayyan nezhad,S. (2009).

### Google+
https://plus.google.com/.../posts?... ▾ Translate this page
ديانا **diana** . ﷺﷺزﻳﺒﺎ ﺧﺎﻟﻲﷺﷺﺑﻮﻙ months ago. +7. 1. Mehdi **yaghobi** 4 . ديانا **diana** ...
ديانا. **diana** . ﺧﺎﻟﻲﷺﷺﺑﻮﻙ زﻳﺒﺎﷺﷺ Mehdi **yaghobi**

### 7855 Ellenbogen Street - Blockshopper
losangeles.blockshopper.com/property/2552013024/7855_ellenbogen ▾
$350,000, Resale, 10/23/2008, B: Fenya **Yaghobi**, BA: N/A, S: Vadim Dashuta, SA:
N/A, $535,000, Resale, 02/16/2007, B: Vadim Dashuta, BA: N/A, S: Uliana ...

### meysam yaghobi @s0g0ut Instagram photos | Websta ...
websta.me › Posts of @s0g0ut ▾
meysam **yaghobi**(@s0g0ut) Instagram photos | Use Instagram online! Websta ...
Wermeson Mello; **Diana** Robledo Diaz; Rodolfo Jimenez Ojeda; Daniel Valentic ...

Page 28

1  2  3  4  5  6  7  8  9  10          Next

O Calabasas, CA - From your Internet address - Use precise location - Learn more

Help        Send feedback        Privacy        Terms

EXHIBIT "5"

**This page is part of your document - DO NOT DISCARD**

**06 1739401**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
08/07/06 AT 08:00am**

## TITLE(S) :



L  E  A  D     S  H  E  E  T

FEE

FEE $ 73. VV
DAF $ 2 ·
C-20

a3

D.T.T.



CODE
20

CODE
19

CODE
9____

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**    **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

## EQUITY TITLE

*V*

**Recording Requested By /
Return To:**
WMC MORTGAGE CORP.

3100 THORNTON AVENUE

BURBANK, CA 91504

Attn:    (WHOLESALE)

**06  1739401**

**Prepared By:**
ANTONIONI POL

WMC MORTGAGE CORP.

3100 THORNTON AVENUE

BURBANK, CA 91504

*4324-021-024*

---

[Space Above This Line For Recording Data]

## DEED OF TRUST

Serv #: 11614689

| | |
|---|---|
| JAMSHIDIGILANI | |
| Loan #: | 11614689 |
| MIN: | 100136300116146894 |
| PIN: | 4324-021-024 |

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 28, 2006         , together with all Riders to this document.

(B) "Borrower" is SAHAR JAMSHIDIGILANI, A MARRIED WOMAN, AS HER SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.

(C) "Lender" is WMC MORTGAGE CORP.

Lender is a Corporation                              organized and existing under the laws of
CALIFORNIA                      . Lender's address is  P.O. BOX 54089, LOS ANGELES,
CA 90054-0089

(D) "Trustee" is WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         Form 3005 1/01
DOCUKCA1                                                                        *(page 1 of 14 pages)*
DOCUKCA1.VTX  12/19/2005

LA063 1679

Order: Non-Order Search  Doc: CALOSA:2006 01739401          Page 2 of 24          Created By: fntmclall  Printed: 10/19/2015 3:33:50 PM PST

11614689                                                                    11614689

(E)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)  "Note" means the promissory note signed by Borrower and dated   July 28, 2006           . The Note states that Borrower owes Lender

Five Hundred Sixteen Thousand And 00/100

Dollars (U.S. $  516,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  August 1, 2036          .

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [x] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] 1-4 Family Rider | [x] Other(s) [specify] Balloon Rider | |

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "Escrow Items" means those items that are described in Section 3.

(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01     *(page 2 of 14 pages)*
DOCUKCA2
DOCUKCA2.VTX  12/16/2005

06 1739401

11614689                                                    11614689

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                of  LOS ANGELES                          :
[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AND KNOWN AS
EXHIBIT 'A'.

which currently has the address of  1531 CAMDEN AVENUE 101
                                                  [Street]
LOS ANGELES                           , California  90024              ("Property Address"):
[City]                                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    (page 3 of 14 pages)
DOCUKCA3
DOCUKCA3.VFX  12/16/2005

**06  1739401**

5

11614689                                                    11614689

a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    *(page 4 of 14 pages)*
DOCUKCA4
DOCUKCA4.VTX   12/16/2005

06 1739401

11614689                                                                    11614689

verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    *(page 5 of 14 pages)*
DOCUKCAS
DOCUKCAS.VFX  12/14/2005

11614689                                                            11614689

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3005 1/01      *(page 6 of 14 pages)*
DOCUKCA6
DOCUKCA6.VTX   12/16/2005

06 *1739401*

11614689                                                                                           11614689

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01      *(page 7 of 14 pages)*
DOCUKCA7
DOCUKCA7.VTX    12/16/2005

06 **1739401**

Order: Non-Order Search  Doc: CALOSA:2006 01739401          Page 8 of 24          Created By: fntmclall  Printed: 10/19/2015 3:33:51 PM PST

11614689                                    11614689

such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    *(page 8 of 14 pages)*
DOCUKCAS
DOCUKCA8.VTX  12/16/2005

06  1739401

11614689                                           11614689

otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    *(page 9 of 14 pages)*
DOCUKCA9
DOCUKCA9.VTX  12/16/2005

Page 40

11614689                                                    11614689

by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    *(page 10 of 14 pages)*
DOCUKCA10
DOCUKCAA.VTX    12/16/2005

06  1739401

Order: Non-Order Search  Doc: CALOSA:2006 01739401              Page 11 of 24              Created By: fntmcliall  Printed: 10/19/2015 3:33:51 PM PST

Page 41

11614689                                                                    11614689

Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall co ntinue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3005 1/01       *(page 11 of 14 pages)*
DOCUKCA11
DOCUKCA2.VT2   12/16/2005

06  *1739401*

13

11614689                                                    11614689

Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    *(page 12 of 14 pages)*
DOCUKCA12
DOCUKCAC.VTX    12/16/2005

06 1739401

14

11614689                                                                    11614689
BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

7/28/06

- Borrower - SAHAR JAMSHIDIGILANI - Date -

CALIFORNIA—Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    (page 13 of 14 pages)
DOCUKCA13
DOCUKCAD.VTX    12/16/2005

06 1739401

15

11614689                [Space Below This Line For Acknowledgment]                11614689

State of _California_                        )
County of _Los Angeles_                      )
                                             )
On _7/28/06_      before me, _Min Yin Lo    Notary Public_            ,
                                            (here insert name and title of the officer)

personally appeared _Sahar Janshidigilani_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



MIN YIN LO
Commission # 1626641
Notary Public - California
Los Angeles County
My Comm. Expires Dec 4, 2009

Signature _____ (Seal)

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    (page 14 of 14 pages)
DOCUKCA14
DOCUKCA8.VTX  04/18/2006

06 1739401

Order: Non-Order Search  Doc: CALOSA:2006 01739401        Page 15 of 24        Created By: fntmclall  Printed: 10/19/2015 3:33:51 PM PST

ORDER NO.: LA0631679

EXHIBIT "A"

A CONDOMINIUM COMPOSED OF:

PARCEL 1:

THAT PORTION OF LOT 1 OF TRACT NO. 31580, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 843, PAGES 97 AND 98, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SHOWN AND DEFINED AS UNIT NO. 101, ON THE CONDOMINIUM PLAN, RECORDED JUNE 6, 1974, AS INSTRUMENT NO. 3640, OF OFFICIAL RECORDS OF SAID COUNTY.

PARCEL 2:

AN UNDIVIDED 1/24 INTEREST IN AND TO THAT PORTION OF LOT 1 OF TRACT NO. 31580, SHOWN AND DEFINED AS "COMMON AREA" ON SAID CONDOMINIUM PLAN.

EXCEPT ANY AND ALL OIL, GAS AND OTHER MINERALS IN AND UNDER SAID THAT MAY BE PRODUCED FROM THE ABOVE DESCRIBED REAL PROPERTY, BUT WITHOUT THE RIGHT OF SURFACE ENTRY OR THE RIGHT TO OCCUPY THE SURFACE OF SAID REAL PROPERTY OR THE SUBSURFACE THEREOF ABOVE A DEPTH OF 500 FEET BELOW THE SURFACE THEREOF, AS RESERVED IN A DEED RECORDED APRIL 10, 1975.

06 1739401

3

Page 46

Order: Non-Order Search  Doc: CALOSA:2006 01739401          Page 16 of 24          Created By: fntmclall  Printed: 10/19/2015 3:33:51 PM PST

# ADJUSTABLE RATE RIDER
### (6-Month LIBOR Index - Rate Caps)
### (First Business Day of Preceding Month Lookback)

Serv #: 11614689

JAMSHIDIGILANI
Loan #: 11614689
MIN:    100136300116146894

THIS ADJUSTABLE RATE RIDER is made this **28th**      day of **July, 2006**                ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security
Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the
Borrower's Adjustable Rate Note (the "Note") to **WMC MORTGAGE CORP.**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
**1531 CAMDEN AVENUE 101, LOS ANGELES, CA 90024**

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.      **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of    **6.990**        %. The Note provides for
changes in the interest rate and the monthly payments, as follows:

4.      **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A)      **Change Dates**
The interest rate I will pay may change on the first day of **August, 2008**                ,
and may change on that day every    **6th**      month thereafter. Each date on which my interest rate
could change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--
DOCU#INI                                    Page 1 of 3
DOCUJLM1.VTX  01/27/2006

**06  1739401**

11614689                                                    11614689
### (B)    The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C)    Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six and Seven-Eighths**                                    percentage point(s) ( **6.875** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on a date that is **10**    years after the Maturity Date (such date being referred to herein as the "Amortization Date") at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. I understand that as a result of the Amortization Date being after the Maturity Date, I will have a balloon payment on the Maturity Date.

### (D)    Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **9.990** % or less than **6.990**    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.000**    %) from the rate of interest I have been paying for the preceding **6**    months. My interest rate will never be greater than **13.490**   %, or less than **6.990**    %.

### (E)    Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F)    Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--
DOCU1N2                                          Page 2 of 3
DOCU1N2.VTX   05/24/2006

06  1739401

Order: Non-Order Search  Doc: CALOSA:2006 01739401          Page 18 of 24          Created By: fntmclall  Printed: 10/19/2015 3:33:51 PM PST

Page 48

11614689                                                                    11614689

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

7/28/06

- Borrower - SAHAR JAMSHIDIGILANI - Date -

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (First Business Day Lookback)--Single Family--
DOCU#N3
DOCU#N3.VTX  01/27/2006                     Page 3 of 3

06 1739401

[Space Above This Line For Recording Data]

# BALLOON RIDER

JAMSHIDIGILANI
Loan #: 11614689
MIN:    100136300116146894

Serv #: 11614689

THIS BALLOON RIDER is made this 28th      day of July, 2006      , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to WMC MORTGAGE CORP.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
1531 CAMDEN AVENUE 101 LOS ANGELES, CA 90024

[Property Address]

The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date". I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder".

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

NOTWITHSTANDING THE  40  -YEAR AMORTIZATION PERIOD, THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN

BALLOON RIDER MULTISTATE (01/97)
DOCUHAI
DOCU34AI.VTX  05/24/2006                       Page 1 of 2

06 1739401

Order: Non-Order Search  Doc: CALOSA:2006 01739401          Page 20 of 24          Created By: fntmclall  Printed: 10/19/2015 3:33:52 PM PST

11614689                                                                          11614689

IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. ACCORDINGLY, IF THIS LOAN
HAS NOT BEEN SATISFIED, YOU WILL HAVE A BALLOON PAYMENT ON THE MATURITY
DATE.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

7/28/06

- Borrower - SAHAR JAMSHIDIGILANI - Date -

BALLOON RIDER MULTISTATE (01/97)

DOCUHA2
DOCU3AA3.VTX  05/24/2006                          Page 2 of 2

06  1739401

Order: Non-Order Search  Doc: CALOSA:2006 01739401          Page 21 of 24          Created By: fntmclall  Printed: 10/19/2015 3:33:52 PM PST

Page 51

# CONDOMINIUM RIDER

Servicing #: 11614689

JAMSHIDIGILANI
Loan #: 11614689
MIN:    100136300116146894

THIS CONDOMINIUM RIDER *is made this* 28th *day of* July, 2006                 , and is
incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed
(the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's
Note to WMC MORTGAGE CORP.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
1531 CAMDEN AVENUE 101, LOS ANGELES, CA 90024

[Property Address]
The Property includes a unit in, together with an undivided interest in the common elements of, a condominium
project known as:
CAMDEN WEST

[Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project
(the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the
Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of
Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

    **A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of
regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                 Form 3140 1/01
DOCUROA1
DOCUROA1.VTX  08/25/2005                               *(page 1 of 3 pages)*

**06** *1739401*

Order: Non-Order Search  Doc: CALOSA:2006 01739401         Page 22 of 24         Created By: fntmclall  Printed: 10/19/2015 3:33:52 PM PST

11614689                                                      11614689

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3140 1/01
DOCUROA3
DOCUROA3.VTX   08/25/2005        (page 2 of 3 pages)

**06 1739401**

Order: Non-Order Search  Doc: CALOSA:2006 01739401        Page 23 of 24        Created By: fntmclall  Printed: 10/19/2015 3:33:52 PM PST

Page 53

24

11614689                                                    11614689
BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Condominium Rider.

_____    7/28/06
- Borrower - SAHAR JAMSHIDIGILANI - Date -

MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         Form 3140 1/01
DOCUROA3
DOCUROA3.VTX   08/25/2009                        (page 3 of 3 pages)

06 1739401

Order: Non-Order Search  Doc: CALOSA:2006 01739401          Page 24 of 24          Created By: fntmcdall   Printed: 10/19/2015 3:33:52 PM PST

# EXHIBIT "6"



This page is part of your document - DO NOT DISCARD



## 20121212067



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/14/12 AT 02:43PM**

| | |
|---|---|
| FEES: | 22.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 22.00 |



**L E A D S H E E T**



201208140610034

00006276661



004208343

**SEQ:**
**01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E466503

RECORDING REQUESTED BY:

MAIL TAX STATEMENTS AND
WHEN RECORDED MAIL TO:
Masoud KB Noveir
1531 Camden Ave; suite 101,
Los Angeles, CA 90024

APN: 4324-021-024                                    SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S):    DOCUMENTARY TRANSFER TAX IS $ NONE TRANSFER TO A TRUST
_____ Computed on full value of property conveyed, or
    X    Computed on full value less liens and encumbrances remaining at time of sale.
_____ Unincorporated area  X  City of Los Angeles

For valuable consideration, receipt of which is hereby acknowledged,

SAHAR JAMSHIDIGILANI

hereby GRANT(S) to
        Masoud KB Noveir and Sahar Jamshidigilani, Co-Trustees

an undivided one eighth interest in
the real property situated in the County of Los Angeles, State of California, more particularly described as
follows: See Attachment Exhibit "A" for Property Description.

Commonly known as: 1531 Camden Ave; Suite 101, Los Angeles, CA 90024

Dated: August 14, 2012

SAHAR JAMSHIDIGILANI

STATE OF CALIFORNIA                            )
                                              ) SS.
COUNTY OF  Los Angeles                        )
On  8/14/2012  before me, Shawn R. Tabatabai, Notary Public, personally
appeared  Sahar Jamshidi Gilani
who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

Signature_____

SHAWN R. TABATABAI
COMM. # 1830124
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Feb. 3, 2013

MAIL TAX STATEMENTS AS DIRECTED ABOVE

Order: Non-Order Search  Doc: CALOSA:2006 01739401        Page 1 of 1        Created By: fntmclall  Printed: 10/2/2015 2:28:01 PM PST

# EXHIBIT "7"



**This page is part of your document - DO NOT DISCARD**



# 20111112766

Pages:
0005

**Recorded/Filed In Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**08/18/11 AT 08:00AM**

| | |
|---|---|
| FEES: | 27.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 27.00 |



**LEADSHEET**



201108180160006

00004550506



003457956

**SEQ:**
**02**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T35

Recording requested by:
LSI Title Company

When Recorded Mail To
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

APN # 4324-021-024
Property Address.
1531 CAMDEN AVENUE 101
LOS ANGELES, CALIFORNIA 90024


08/18/2011
*20111112766*

DFF201110134002852

Space above this line for Recorder's use only

Trustee Sale No. . 20110134002852       Title Order No : 110381330

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this Notice of Default may be recorded (which date of recordation appears on this notice).**

This amount is $79,803.54 as of 08/16/2011 and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor

FCUS_NoticeOfDefault.rpt - Record - (05/12/2011) - Ver-32                                    Page 1 of 3

**IMPORTANT NOTICE**
NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
Trustee Sale No.: 20110134002852      Title Order No.: 110381330

permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**AMERICA'S SERVICING COMPANY**
c/o NDEX WEST, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT:     NDEX WEST, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 07/28/2006, executed by SAHAR JAMSHIDIGILANI, as Trustor, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), as Beneficiary Recorded on 08/07/2006 as Instrument No. 06 1739401, MODIFIED 06/15/2009 AS INSTRUMENT 20090895374 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of $516,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 3/1/2010 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.

NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

FCUS_NoticeOfDefault.rpt - Record - (05/12/2011) - Ver-32                                                        Page 2 of 3

4

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**
Trustee Sale No   20110134002852        Title Order No   110381330

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: 08/16/2011

**NDEX WEST, LLC as Agent for Beneficiary**

By:     Carlie Fisher

FCUS NoticeOfDefault.rpt - Record - (05/12/2011) - Ver-12

Page 3 of 3

20110134 C02852

NCDDC

## NOTICE OF DEFAULT DECLARATION
### PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

Wells Fargo Bank, N.A.
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: SAHAR JAMSHIDIGILANI
Co Borrower:
Property Address: 1531 CAMDEN AVE
LOS ANGELES, CA 90025

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the "Beneficiary")
represent and declares that the requirements of CA Civil Code 2923.5 have been met. This Declaration is
required for any residential owner occupied property in which the loan was originated between January 1,
2003 and December 31, 2007. Non-owner occupied and vacant properties are exempt from the
requirements of CA Civil Code 2923.5.

The requirement indicated by "X" was met by the Beneficiary:

_ The Beneficiary has made contact with the borrower pursuant to CA Civil Code
2923(a)(2). Contact with the borrower was made in person or by telephone to assess the borrower's
financial situation and explore options for the borrower to avoid foreclosure.

X Due Diligence to contact the borrower was exercised pursuant to CA Civil Code 2923.5(g)(2) by the
Beneficiary.

_ The borrower has surrendered the property as evidenced by either a letter confirming the
surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or
authorized agent pursuant to CA Civil Code 2923.5(h)(1).

_ The borrower has contracted with an organization, person, or entity whose primary
business is advising people who have decided to leave their homes on how to extend the foreclosure
process and avoid their contractual obligations to mortgagees or beneficiaries pursuant to CA Civil
Code 2923.5(h)(2).

_ The borrower has filed for bankruptcy and the proceedings have not been finalized
pursuant to CA Civil Code 2923.5(h)(3).

_ An Exemption as identified in 2923.5 (h) & (i) applies: The loan did not originate
between January 1, 2003 and December 31, 2007 or the property is deemed Non-owner occupied or
vacant.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is
true and correct.

Dated: 7-29-11

Wells Fargo Bank, N.A.
Sheri K. Brawley
VP of Loan Documentation

# EXHIBIT "8"



**This page is part of your document - DO NOT DISCARD**

## 20140944258





Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**09/09/14 AT 08:00AM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**L E A D S H E E T**



201409092890009

**00009599795**



006383969

**SEQ:
09**

**ERDS – 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E12

Recording requested by:
**LSI Title Company**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**
**(866) 795-1852**

APN #: 4324-021-024
Property Address:
**1531 CAMDEN AVENUE 101**
**LOS ANGELES, CALIFORNIA 90024**


NOTS20110134002852

_____
Space above this line for Recorder's use only

Trustee Sale No.: 20110134002852       Title Order No.: 110381330       FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

**ATTENTION RECORDER: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY APPLIES ONLY TO COPIES PROVIDED TO THE TRUSTOR, NOT TO THIS RECORDED ORIGINAL NOTICE.**

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**

**注：本文件包含一个信息摘要**

**참고사항: 본 첨부 문서에 정보 요약서가 있습니다**

**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**

**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**

**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 07/28/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

**NDEx West, L.L.C.**, as duly appointed Trustee under and pursuant to Deed of Trust **Recorded on 08/07/2006 as Instrument No. 06 1739401 , MODIFIED 06/15/2009 AS INSTRUMENT 20090895374** of official records in the office of the County Recorder of **LOS ANGELES** County, State of **CALIFORNIA**.
**EXECUTED BY:        SAHAR JAMSHIDIGHALANI,**
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by California Civil Code 2924h(b), (payable at time of sale in lawful money of the United States).
**DATE OF SALE:     10/02/2014        TIME OF SALE:        10:00 AM**
**PLACE OF SALE:     BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC CENTER PLAZA, POMONA CA.**
**STREET ADDRESS** and other common designation, if any, of the real property described above is purported to be:
**1531 CAMDEN AVENUE 101, LOS ANGELES, CALIFORNIA 90024**
**APN#:        4324-021-024**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied,

FCUS_NoticeOfTrusteeSale.rpt - Record - 05/29/2013 - Ver-38

Page 1 of 2

Trustee Sale No. : 20110134002852        Title Order No.: 110381330        FHA/VA/PMI No.:

regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $735,785.81. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 916-939-0772 for information regarding the trustee's sale or visit this Internet Web site www.nationwideposting.com for information regarding the sale of this property, using the file number assigned to this case 20110134002852. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
NATIONWIDE POSTING & PUBLICATION A DIVISION
OF FIRST AMERICAN TITLE INSURANCE COMPANY
5005 WINDPLAY DRIVE, SUITE 1
EL DORADO HILLS, CA 95762-9334
916-939-0772
www.nationwideposting.com

NDEx West, L.L.C. as Trustee

BY: Ric Juarez        Associate Director

NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Dated: 09/05/2014

FCUS_NoticeOfTrusteeSale.rpt - Record - 05/29/2013 - Ver-38        Page 2 of 2

EXHIBIT "9"

```
+----------------------------------------+
|           FILED & ENTERED              |
|                                        |
|      +----------------------------+    |
|      |                            |    |
|      |        OCT 06 2015         |    |
|      |                            |    |
|      +----------------------------+    |
|                                        |
|      CLERK U.S. BANKRUPTCY COURT       |
|      Central District of California    |
|      BY penning  DEPUTY CLERK          |
+----------------------------------------+
```

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Masoud Noveir,<br><br><br><br>Alleged Debtor. | Case No.: 2:15-24970-TD<br><br>CHAPTER 7<br><br>**ORDER TO SHOW CAUSE WHY THE INVOLUNTARY PETITION SHOULD NOT BE DISMISSED**<br><br>Date:  October 21, 2015<br>Time:  10:00 a.m.<br>Courtroom:  1345<br> 255 E. Temple Street<br> Los Angeles, CA 90012 |

TO THE PETITIONING CREDITOR:

YOU ARE HEREBY ORDERED TO APPEAR on October 21, 2015

at 10:00 a.m. in the above entitled Court, and show cause in writing to be filed not

later than October 14, 2015  why this involuntary petition should not be dismissed.  A

judge's copy of your written response must be delivered to chambers not later than

5:00 p.m. on October 14, 2015.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In addition, you are to bring with you written evidence of the debt asserted in your petition filed September 29, 2015, government issued photo identification and be prepared to testify under oath as to the basis of this debt.

The alleged petitioning creditor signed the involuntary petition, under penalty of perjury, alleging that her name, address and amount of claim is true and correct, according to the best of her knowledge, information, and belief.  By signing this petition, the alleged creditor is certifying that the petition is not being presented for any improper purpose and the allegations have factual support.  FRBP 9011(b)(1) and (3).  Therefore, should you fail to respond in writing as set forth above, or to appear, or should you fail to provide sufficient evidence at the hearing to show that any debt asserted exists, this involuntary petition will be dismissed with prejudice and this case may be referred to the United States Attorney for possible criminal prosecution.

You are advised to contact an attorney prior to the hearing to obtain legal advice as to the evidence to put before the Court.

Petitioning creditor must appear in Los Angeles, Courtroom 1345, 255 E. Temple Street, Los Angeles, CA 90012.

IT IS SO ORDERED.

###

Date: October 6, 2015

Thomas B. Donovan
United States Bankruptcy Judge

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

5305 Andasol Ave., Encino, CA 91316

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _10/20/2015_ , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Avi Schild     bk@atlasacq.com
United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
Darlene C Vigil     cdcaecf@bdfgroup.com
Gilbert R Yabes     ecfcacb@aldridgepite.com, GRY@ecf.inforuptcy.com;gyabes@aldridgepite.com

☐  Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On (*date*) _10/20/2015_ , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| | | |
|---|---|---|
| Diana Yaghobi | Masoud Noveir | Erica D. Jones, Esq. |
| 9875 S Santa Monica | 1531 Camden Ave. #101 | BDF Law Group, Barrett Daffin Frappier, 15000 Surveyor Bl. |
| Beverly Hills, CA 90212 | Los Angeles, CA 90025 | Addison, TX 75001 - atty for lender |

☐  Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _10/20/2015_ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon Thomas Donovan, US Bankruptcy Court, 255 E. Temple St., Ct 1345, Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _10/20/2015_ | _Harris L. Cohen_ | |
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.